1  | Joshua B. Swigart (SBN 225557)
2  | Josh@SwigartLawGroup.com
   | **SWIGART LAW GROUP, APC**
3  | 2221 Camino del Rio S, Ste 308
   | San Diego, CA 92108
4  | P: 866-219-3343
5
   | *Attorneys for Plaintiff*
6  | *and The Putative Class*

Daniel G. Shay (SBN 250548)
DanielShay@TCPAFDCPA.com
**LAW OFFICE OF DANIEL G. SHAY**
2221 Camino del Rio S, Ste 308
San Diego, CA 92108
P: 619-222-7429

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DAVID KAUFFMAN, individually and on behalf of others similarly situated,<br><br>                    Plaintiff,<br><br>vs.<br><br><br>ALASKA AIRLINES, INC.,<br><br>                    Defendant. | CASE NO: 22-CV-1525-DMS-AGS<br><br>CLASS ACTION<br><br>SECOND AMENDED COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:<br><br>1. THE WIRETAP ACT, 18 U.S.C. § 2510 ET SEQ<br><br>2. THE CALIFORNIA INVASION OF PRIVACY ACT, CAL. PEN. CODE § 631<br><br>3. THE CALIFORNIA INVASION OF PRIVACY ACT, CAL. PEN. CODE § 632<br><br>4. THE CALIFORNIA INVASION OF PRIVACY ACT, CAL. PEN. CODE § 632.7<br><br>JURY TRIAL DEMANDED |

1

Second Amended Complaint

| | |
|---|---|
| 1 | **INTRODUCTION** |
| 2 | 1.   David Kauffman ("Plaintiff"), individually and on behalf of all other similarly |
| 3 | situated consumers ("Class Members"), brings this action for damages and |
| 4 | injunctive relief against Alaska Airlines, Inc. ("Defendant"), and its present, |
| 5 | former, or future direct and indirect parent companies, subsidiaries, affiliates, |
| 6 | agents, related entities for violations of the Federal Wiretap Act, 18 U.S.C. § |
| 7 | 2510 et seq (the "Wiretap Act") and the California Invasion of Privacy Act |
| 8 | ("CIPA"), Cal. Pen. Code §§ 631, 632 and 632.7, in relation to the unauthorized |
| 9 | interception, collection, recording, and dissemination of Plaintiff's and Class |
| 10 | Members' communications and data. |

2.   The Federal Legislature passed the Wiretap Act to protect the privacy of the people of the United States. The Wiretap Act is very clear in its prohibition against intentional unauthorized tapping or interception of any wire, oral, or electronic communication.  In addition to other relevant sections, the Wire Tap Act states that any person who;

> "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication" has violated the act.  18 U.S.C. § 2511

3.   The California State Legislature passed CIPA to protect the right of privacy of the people of California. The California Penal Code is very clear in its prohibition against unauthorized tap, connection or recording without the consent of the other person:

> "Any person who, by means of any machine, instrument, or contrivance, or any other matter, intentionally taps, or makes any unauthorized connection . . . with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable. Or instrument of any internal telephonic communication system, or who willfully and without consent of all parties to the communication, or in any unauthorized manner, reads, or attempts to read, or to learn the contents or meaning of any message, report, or communication while the same is in transit

2

or passing over any wire, line, or cable, or is being sent from, or received at any place within this state [violates this section]."
Cal. Penal Code § 631

"A person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio, shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500) per violation, or imprisonment in a county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment. If the person has previously been convicted of a violation of this section or Section 631, 632.5, 632.6, 632.7, or 636, the person shall be punished by a fine not exceeding ten thousand dollars ($10,000) per violation, by imprisonment in a county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment."
Cal. Penal Code § 632.

"Every person who, without the consent of all parties to a communication, intercepts or receives and intentionally records, or assists in the interception or reception and intentional recordation of, a communication transmitted between two cellular radio telephones, a cellular radio telephone and a landline telephone, two cordless telephones, a cordless telephone and a landline telephone, or a cordless telephone and a cellular radio telephone, shall be punished by a fine not exceeding two thousand five hundred dollars ($2,500), or by imprisonment in a county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment.  If the person has been convicted previously of a violation of this section or of Section 631 , 632, 632.5, 632.6, or 636, the person shall be punished by a fine not exceeding ten thousand dollars ($10,000), by imprisonment in a county jail not exceeding one year, or in the state prison, or by both that fine and imprisonment."
Cal. Penal Code § 632.7.

///

///

Second Amended Complaint

4. This case stems from Defendant's unauthorized interception, connection and recording of Plaintiff's and Class Members' electronic communications through the use of "session replay" spyware that allowed Defendant to read, learn the contents of, and make reports on Plaintiff's and Class Members' interactions on Defendant's website.

5. Plaintiff brings this action for every violation of the Wiretap Act which provides for statutory damages of the greater of $10,000 or $100 per day for each violation of 18 U.S.C. §2510 et seq under 18 U.S.C. §2520.

6. Plaintiff also brings this action for every violation of California Penal Code §§ 631, 632 and 632.7 which provides for statutory damages of $5,000 for each violation, pursuant to California Penal Code § 637.2(a)(1).

7. As discussed in detail below, Defendant utilized "session replay" spyware to intercept and record Plaintiff's and the Class Members' electronic computer-to-computer data communications. Defendant deployed the "session replay" spyware at the moment Plaintiff and Class Members visited Defendant's website, and led Defendant to intercept, read, record and learn the contents of Plaintiff's and Class Members' interactions with Defendant's website, including, but not limited to, how Plaintiff and Class Members interacted with the website, mouse movements and clicks, keystrokes, search items, information inputted into the website, and pages and content viewed while visiting the website. Defendant intentionally tapped and made unauthorized interceptions and connections to Plaintiff's and Class Members' electronic communications to read and understand movement on the website, as well as everything Plaintiff and Class Members did on those pages, *e.g.*, what Plaintiff and Class Members searched for, looked at, the information inputted, and clicked on.

8. Defendant made these unauthorized interceptions, connections and recordings without the knowledge or prior consent of Plaintiff or Class Members.

///

4

9.   The "session replay" spyware utilized by Defendant is sophisticated computer software that allows Defendant to contemporaneously intercept, capture, read, record, observe, re-route, forward, redirect, and receive Plaintiff's and Class Members' electronic communications.

10.  "Technological advances[,]" such as Defendant's use of "session replay" technology, "provide 'access to a category of information otherwise unknowable' and 'implicate privacy concerns' in a manner different from traditional intrusions as a 'ride on horseback' is different from a 'flight to the moon.'" *Patel v. Facebook, Inc.,* 932 F.3d 1264, 1273 (9th Cir. 2019) (quoting *Riley v. California*, 573 U.S. 373, 393 (2014)).

11.  Jonathan Cherki, the CEO of a major "session replay" spyware company – while discussing the merger of his company with another "session replay" provider – publicly exposed why companies like Defendant engage in learning the contents of visits to their websites: "The combination of Clicktale and Contentsquare heralds an unprecedented goldmine of digital data that enables companies to interpret and predict the impact of any digital element – including user experience, content, price, reviews and product – on visitor behavior[.]"[1] Mr. Cherki added that, "this unique data can be used to activate custom digital experiences in the moment via an ecosystem of over 50 martech partners. With a global community of customer and partners, we are accelerating the interpretation of human behavior online and shaping a future of addictive customer experience."[2]

12.  Unlike typical website analytics services that provide aggregate statistics, the session replay technology utilized by Defendant is intended to record and playback individual browsing session, as if someone is looking over Plaintiff's

---

[1] https://www.prnewswire.com/news-releases/contentsquare-acquires-clicktale-to-create-the-definitive-global-leader-in-experience-analytics-300878232.html
[2] *Id*

Second Amended Complaint

or a Class Members' shoulder with a camera set to record when visiting Defendant's website. The technology also permits companies like Defendant to view the interactions of visitors on Defendant's website in live, real-time.

13. The extent and detail collected by users of the technology, like Defendant, far exceeds Plaintiff's and Class Members' expectations when visiting websites like Defendant's. The technology not only allows the tapping and unauthorized connection of a visitor's electronic communication with a website, but also allows the "session replay" user to create a detailed profile for each visitor to the site.

14. Moreover, the collection and storage of page content may cause sensitive information and other personal information displayed on a page to lead to third parties. This may expose website visitors to identity theft, online scams, and other unwanted behavior.

15. In 2019, Apple warned application developers using "session replay" technology that they were required to disclose such action to their users, or face being immediately removed from the Apple Store: "Protecting user privacy is paramount in the Apple ecosystem. Our App Store Review Guidelines require that apps request explicit user consent and provide a clear visual indication when recording, logging, or otherwise making a record of user activity."[3]

16. Consistent with Apple's concerns, countless articles have been written about the privacy implications of recording user interactions during a visit to a website, including:

(a) *The Dark Side of 'Replay Sessions' That Record Your Every Move Online*, located at https://www.wired.com/story/the-dark-side-of-replay-sessions-that-record-your-every-move-online/;

---

[3] https://techcrunch.com/2019/02/07/apple-glassbox-apps/

Second Amended Complaint

(b) ***Session-Replay Scripts Disrupt Online Privacy in a Big Way***, located at https://www.techrepublic.com/article/session-replay-scripts-are-disrupting-online-privacy-in-a-big-way/;

(c) ***Are Session Recording Tools a Risk to Internet Privacy?*** located at https://mopinion.com/are-session-recording-tools-a-risk-to-internet-privacy/

(d) ***Session Replay is a Major Threat to Privacy on the Web***, located at https://www.itnews.com.au/news/session-replay-is-a-major-threat-to-privacy-on-the-web-477720;

(e) ***Popular Websites Record Every Keystroke You Make and Put Personal Information and Risk***, located at https://medium.com/stronger-content/popular-websites-record-every-keystroke-you-make-and-put-personal-information-at-risk-c5e95dfda514; and

(f) ***Website Owners can Monitor Your Every Scroll and Click***, located at https://www.digitalinformationworld.com/2020/02/top-brands-and-websites-can-monitor-your-every-scroll-and-click.html

17.   In sum, Defendant illegally tapped, made an unauthorized connection to, intercepted and recorded Plaintiff's and Class Members' electronic communications through visits to Defendant's website, causing injuries, including violations of Plaintiff's and Class Members' substantive legal privacy rights under the Wiretap Act and CIPA.

18.   Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

19.   Unless otherwise stated, all the conduct engaged in by Defendant took place in California.

///
///
///

Second Amended Complaint

20.   All violations by Defendant were knowing, willful, and intentional, and Defendant did not maintain procedures reasonably adapted to avoid any such violation.

21.   Unless otherwise indicated, the use of Defendant's name in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendant.

## PARTIES

22.   Plaintiff is, and at all times mentioned herein was, a natural person and resident of the State of California and the County of San Diego.

23.   Defendant is, and at all times mentioned herein was, an Alaska corporation with its principal place of business located in Washington state.

24.   At all times relevant herein Defendant conducted business in the State of California, in the County of San Diego, within this judicial district.

## JURISDICTION & VENUE

25.   Jurisdiction of this Court is proper pursuant to 28 U.S.C. § 1331 because this action arises out of Defendants' violations of the Wiretap Act, 18 U.S.C. §2510 et seq.

26.   Jurisdiction is also established under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2), because Plaintiff, a resident of the State of California, seeks relief on behalf of (1) a national class and (2) a California subclass, which will result in at least one Class Member belonging to a different state than Defendant, a Delaware Corporation with its principal place of business in Kentucky.

27.   Plaintiff is requesting statutory damages of the greater of $10,000 or $100 per day for each violation of 18 U.S.C. §2510 et seq and $5,000 per violation of Cal. Pen. Code §§ 631, 632 and 632.7, which when aggregated among a proposed

Second Amended Complaint

1   class number in the hundreds of thousands, exceeds the $5,000,000 threshold for

2   federal court jurisdiction under CAFA.

3   28.   Therefore, both diversity jurisdiction and the damages threshold under CAFA

4   are present, and this Court has jurisdiction.

5   29.   Because Defendant conducts business within the State of California, personal

6   jurisdiction is established.

7   30.   Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) the

8   conduct complained of herein occurred within this judicial district; and (ii)

9   Defendant conducted business within this judicial district at all times relevant.

10   **FACTUAL ALLEGATIONS**

11   31.   Defendant owns and operates the following website: www.alaskaair.com.

12   32.   Throughout 2022, Plaintiff browsed Defendant's website approximately twenty

13   (20) times.

14   33.   Plaintiff was in California during Plaintiff's visits to Defendant's website.

15   34.   Plaintiff used his personal laptop computer and android cell phone to view and

16   interact with Defendant's website.

17   35.   Most of Plaintiff's visits to Defendant's website were to (1) check his "Mileage

18   Plan" (2) check his "status" category, *i.e.* "elite status" or "MVP status" (3) check

19   for "exclusive offers" and (3) research other voluntary amenities Defendant has

20   chosen to provide.[4]

21   36.   As soon as Defendant's website loaded on Plaintiff's computer and cell phone,

22   Defendant's "session replay" software caused Plaintiff's computer and cell phone

23   to begin transmitting electronic communications in the form of instructions to

24   Defendant's computer servers utilized to operate its website. The commands

25   were sent as messages indicating to Defendant what content was being viewed,

26   clicked, requested and/or inputted by Plaintiff and Class Members.

27

28

[4] https://www.alaskaair.com/

9

Second Amended Complaint

37.   The communications sent by Plaintiff and Class Members to Defendant's servers included, but were not limited to, the following actions taken by Plaintiff and Class Members while on Defendant's website: mouse clicks and movements, keystrokes, search items, information inputted by Plaintiff and Class Members, pages and content viewed by Plaintiff and Class Members, scroll movements, and copy and paste actions.

38.   Defendant responded to Plaintiff's and Class Members' electronic communications by supplying – through its website – the information requested by Plaintiff and Class Members. *Revitch v. New Moosejaw, LLC,* U.S. Dist. LEXIS 186955, at *3 (N.D. Cal. 2019) ("This series of requests and responses – whether online or over the phone – is communication.").

39.   Defendant recorded and shared the interactions with Plaintiff and Class Members by using session replay software which enabled it to see the screens of Plaintiff and Class members while they were on Defendant's website.

40.   At the "session replay" software's instruction, I recordings or "sessions" were intercepted by and shared with the third-party vendor that sold Defendant the software and may have been shared with others.

41.   Over the last year and beyond, Defendant has had embedded within its website session replay HTML code and has continuously operated at least one session replay script using the code.

42.   The code and script were sold to Defendant by Quantum Metric or another third-party session replay provider.

43.   The session replay spyware was always active and intercepted and recorded every communication with Defendant's website the moment a visitor accessed the site.

///

///

///

///

Second Amended Complaint

44.  Quantum Metric enabled Defendant to "look up the user's session in Quantum Metric with a user attribute like a mileage number, then watch the replay to troubleshoot the issue"[5]

45.  Even before Plaintiff and Class Members conducted any movement on Defendant's website (i.e. mouse clicks, keystrokes, etc.), Defendant made the unauthorized connection with Plaintiff's computer or mobile device to intercept and record Plaintiff's electronic communications with its website.

46.  The unauthorized connection and recording began immediately when Plaintiff and Class Members visited Defendant's website – Defendant then caused Plaintiff's and Class Members' movements, interactions, and communications across the website to be intercepted, collected, recorded, and shared with a third-party or third-parties.

47.  Defendant's website constitutes an "amenity" in the scope of the Airline Deregulation Act ("ADA") because Defendant's website, like kiosks, are an amenity that Defendant chooses to provide to Plaintiff and Class Members. See *National Federation of the Blind v. United Airlines, Inc*, 813 F.3d 718 (9th Cir. 2016). Defendant's use of the session replay spyware is wholly separate and lacks a foundational connection to the services Defendant provides. Defendant's website is a convenience for customers and potential customers, but the website does not constitute a "service" in the public utility sense.

48.  Plaintiff and Class Members reasonably expected that visits to Defendant's website would be private, and that Defendant would not be intercepting, recording their communications with Defendant's website, particularly because Defendant failed to present Plaintiff and Class Members with a pop-up disclosure or consent form alerting Plaintiff that the visits to the website were monitored and recorded by Defendant.

---

[5] https://www.quantummetric.com/resources/case-study/alaska-airlines-offers-insight-into-digital-optimization-with-quantum-metric/

Second Amended Complaint

49. Plaintiff and Class Members reasonably believed their interactions with Defendant's website were private and confidential and would not be recorded or monitored for a later playback by Defendant, or worse yet, monitored live while Plaintiff and Class Members were on its website.

50. Quantum Metric which provided the session replay spyware to Defendant is not a provider of wire or electronic communication services, or an internet service provider.

51. Defendant's use of session replay spyware was not instrumental or necessary to the operation or function of Defendant's website or business.

52. Defendant's use of session replay spyware to intercept Plaintiff's electronic communications was not instrumental or necessary to Defendant's provision of any of its goods or amenities. Rather, the level and detail of information surreptitiously collected by Defendant indicates that the only purpose was to gain an unlawful understanding of the habits and preferences of users of its website, and the information collected was solely for Defendant's own benefit.

53. Defendant's use of a session replay spyware to intercept Plaintiff's and Class Members' electronic communications did not facilitate, was not instrumental, and was not incidental to the transmission of Plaintiff's and Class Members' electronic communications with Defendant's website.

54. During one or more of Plaintiff's and Class Members' visits to Defendant's website, Defendant utilized session replay spyware to intercept and record the substance of Plaintiff's and Class Members' electronic communications. The interception and recording were intentional and occurred contemporaneously and included Plaintiff's mouse clicks and movements, keystrokes, search terms entered, information inputted by Plaintiff, pages and content viewed, scroll movements, and copy and paste actions. In other words, Defendant recorded, tapped and made unauthorized connections to the electronic communications that Plaintiff and Class Members made during visits to Defendant's website.

Second Amended Complaint

55.   The relevant facts regarding the full parameters of the communications Defendant intercepted and the extent of how the connections occurred are solely within the possession and control of Defendant.

56.   The session replay spyware utilized by Defendant is not a website cookie, standard analytics tool, web beacon, or other similar technology.

57.   Unlike harmless collection of an internet protocol address, the data collected by Defendant identified specific information inputted and content viewed, and thus revealed personalized and sensitive confidential information about Plaintiff's and Class Member's internet activity and habits.

58.   The electronic communications Defendant intentionally intercepted and recorded were content generated through Plaintiff's use, interaction, and communication with Defendant's website relating to the substance, purport, and/or meaning of Plaintiff's and Class Members' communications with the website.

59.   The electronic communications Defendant intercepted and recorded were not generated automatically and were not incidental to other consumer communications.

60.   The session replay spyware utilized by Defendant allowed Defendant to learn the contents of communications of Plaintiff and Class Members in a manner that was undetectable to them.

61.   Defendant's session replay spyware then recorded, shared, and helped third-parties intercept Plaintiff's and Class Members' communications and played them back and analyzed them for business purposes.

62.   Defendant never sought consent and Plaintiff and Class Members never provided consent for Defendant's unauthorized access to their electronic communications.

63.   Plaintiff and Class Members did not have a reasonable opportunity to discover Defendant's unlawful and unauthorized connections because Defendant did not disclose its actions or seek consent from Plaintiff or Class Members prior to

13

making the connections to the electronic communications through the session replay spyware.

### STANDING

64. Defendant's conduct constituted invasions of privacy because it disregarded Plaintiff's statutorily protected rights to privacy, in violation of the Wiretap Act and CIPA.

65. Defendant caused Plaintiff to (1) suffer invasions of legally protected interests. (2) The invasions were concrete because the injuries actually existed for Plaintiff and continue to exist every time Plaintiff visits Defendant's website. The privacy invasions suffered by Plaintiff and Class Members were real and not abstract. Plaintiff and Class Members have a statutory right to be free from interception and recordings of their communications. The interceptions Defendant performed were meant to secretly spy on Plaintiff to learn more about Plaintiff's behavior. Plaintiff and Class Members were completely unaware they were being observed and recorded.  Plaintiff's injuries were not divorced from concrete harm in that privacy has long been protected in the form of trespassing laws and the Fourth Amendment of the U.S. Constitution for example.  Like here, an unreasonable search may not cause actual physical injury, but is considered serious harm, nonetheless. (3) The injuries here were particularized because they affected Plaintiff in personal and individual ways. The injuries were individualized rather than collective since Plaintiff's unique communications were examined and recorded without consent during different website visits on separate occasions. (4) Defendant's past invasions were actual and future invasions are imminent and will occur next time Plaintiff visits Defendant's website. Defendant continues to intercept communications without consent. A favorable decision by this court would redress the injuries of Plaintiff and each Class Member.

///

///

Second Amended Complaint

## TOLLING

66.  Any applicable statute of limitations has been tolled by the "delayed discovery" rule.  Plaintiff did not know (and had no way of knowing) that Plaintiff's information was intercepted, because Defendant kept this information secret.

## CLASS ACTION ALLEGATIONS

67.  Plaintiff brings this lawsuit as a class action on behalf of Plaintiff and Class Members of two proposed Classes and two Subclass under F.R.C.P. 23.

68.  Plaintiff proposes the following Classes and Subclasses, consisting of and defined as follows:

> Class One (18 U.S.C. § 2511)
> All persons in the United States whose communications were intercepted by Defendant or its agents.

> Subclass of Class One (Cal. Penal Code § 631)
> All persons in California whose communications were intercepted by Defendant or its agents.

> Class Two (Cal. Penal Code § 632)
> All persons in California whose communications were recorded by Defendant or its agents.

> Subclass of Class Two (Cal. Penal Code § 632.7)
> All persons in California whose cellular communications were recorded by Defendant or its agents.

69.  Excluded from each Class are: (1) Defendant, any entity or division in which Defendant has a controlling interest, and its legal representatives, officers, directors, assigns, and successors; (2) the Judge to whom this case is assigned and the Judge's staff; and (3) those persons who have suffered personal injuries as a result of the facts alleged herein.  Plaintiff reserves the right to redefine each Class and to add subclasses as appropriate based on discovery and specific theories of liability.

///

Second Amended Complaint

70. **<u>Numerosity</u>**: The Class Members are so numerous that joinder of all members would be unfeasible and impractical.  The membership of each Class and Subclass is unknown to Plaintiff at this time; however, given that, on information and belief, Defendant accessed millions of unique computers and mobile devices, it is reasonable to presume that the members of each Class are so numerous that joinder of all members is impracticable.  The disposition of their claims in a class action will provide substantial benefits to the parties and the Court.

71. **<u>Commonality</u>**: There are common questions of law and fact as to Class Members that predominate over questions affecting only individual members, including, but not limited to:

- Whether Defendant intercepted any communications with Class Members;

- Whether Defendant has a policy of intercepting digital communications of Class Members;

- Whether Defendant's policy or practice of intercepting Class Members digital communications constitutes a violation of 18 U.S.C. § 2511;

- Whether Defendant's policy or practice of intercepting Class Members digital communications constitutes a violation of Cal. Pen. Code § 631;

- Whether Defendant's policy or practice of recording Class Members confidential digital communications constitutes a violation of Cal. Pen. Code § 632;

- Whether Defendant's policy or practice of recording Class Members digital communications constitutes a violation of Cal. Pen. Code § 632.7;

- Whether Plaintiff and Class Members were aware of Defendant's session replay spyware and had consented to its use.

16

Second Amended Complaint

72. **Typicality**: Plaintiff's and Class Members' electronic communications were intercepted, tapped and recorded without consent or a warning of such interception and recording, and thus, the injuries are also typical to Class Members.

73. Plaintiff and Class Members were harmed by Defendant when it intercepted, tapped, recorded, and stored Plaintiff and Class Members' electronic communications originating from their digital devices. Defendant thereby invaded the privacy of Plaintiff and Class Members.

74. **Adequacy**: Plaintiff is qualified to, and will, fairly and adequately protect the interests of each Class Member with whom Plaintiff is similarly situated. Plaintiff acknowledges that Plaintiff has an obligation to make known to the Court any relationships, conflicts, or differences with any Class Member. Plaintiff's attorneys are well versed in the rules governing class action discovery, certification, and settlement.  In addition, Plaintiff's attorneys are well versed in the rules governing class action discovery, certification, and settlement. They are experienced in handling claims involving consumer actions and violations of the Wiretap Act and CIPA.  Plaintiff has incurred, and will incur, costs and attorneys' fees that are necessarily expended for the prosecution of this action for the substantial benefit of each Class Member.  Plaintiff's attorneys are ready and prepared for that burden.

75. **Predominance**: Questions of law or fact common to the Class Members predominate over any questions affecting only individual members of each Class. The elements of the legal claims brought by Plaintiff and Class Members are capable of proof at trial through evidence that is common to each Class and Subclass rather than individual to the members.

76. **Superiority**: A class action is a superior method for the fair and efficient adjudication of this controversy because:

   a.   Class-wide damages are essential to induce Defendant to

Second Amended Complaint

comply with Federal and California law.

b.     Because of the relatively small size of the individual Class Members' claims, it is likely that only a few Class Members could afford to seek legal redress for Defendant's misconduct.

c.     Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

d.     Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.

e.     Class action treatment is manageable because it will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would endanger.

f.     Absent a class action, Class Members will continue to incur damages, and Defendant's misconduct will continue without remedy.

77.   Plaintiff and the Class Members have suffered harm and damages as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods because individual Class Members have no way of discovering that Defendant intercepted and recorded their communications without their knowledge or consent.

78.   Each Class may also be certified because:

- The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudication with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant;

- The prosecution of separate actions by individual Class Members

Second Amended Complaint

would create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of other Class Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; and

- Defendant has acted, or refused to act, on grounds generally applicable to each Class, thereby making appropriate final and injunctive relief with respect to the members of each Class as a whole.

79. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of Class Members and it expressly is not intended to request any recovery for personal injury and claims related thereto.

80. The joinder of Class Members is impractical and the disposition of their claims in this class action will provide substantial benefits both to the parties and to the court.  The Class Members can be identified through Defendant's records.

## FIRST CAUSE OF ACTION

## VIOLATION OF THE WIRETAP ACT

## 18 U.S.C. § 2510 ET SEQ.

81. The Wiretap Act, as amended by the Electronic Communications and Privacy Act of 1986, prohibits the intentional interception of any wire, oral, or electronic communication.

82. Under 18 U.S.C. § 2520(a) there is a private right of action to any person whose wire, oral, or electronic communication is intercepted.

83. Defendant intercepted Plaintiff's and Class Members' electronic communications without consent when Plaintiff and Class Members navigated through Defendant's website.

84. Plaintiff and Class Members were unaware Defendant was intercepting their electronic communications and tracking their communications and interactions with Defendant's website.

19

Second Amended Complaint

85.    Defendant intentionally utilized technology – the session replay spyware – as a means of intercepting and acquiring the contents of Plaintiff's and Class Members' electronic communications, in violation of 18 U.S.C. § 2511.

86.    Plaintiff and Class Members are persons whose electronic communications were intercepted by Defendant.  As such, they are entitled to preliminary, equitable, and declaratory relief, in addition to statutory damages of the greater of $10,000 or $100 per day for each violation, actual damages, punitive damages, and reasonable attorneys' fees and costs under 18 U.S.C. § 2520.

### SECOND CAUSE OF ACTION

### VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT

### CALIFORNIA PENAL CODE § 631

87.    Defendant intercepted Plaintiff's and Class Members' private electronic communications and transmissions when Plaintiff and Class Members accessed Defendant's website from within the State of California.

88.    Plaintiff and Class Members did not know Defendant was engaging in such interception and therefore could not provide consent to have any part of their private electronic communications intercepted by Defendant.

89.    Plaintiff and Class Members were completely unaware that Defendant intercepted and stored their electronic communications and were therefore unable to consent.

90.    Defendant never advised Plaintiff or other Class Members that any part of their communications would be tapped.

91.    To establish liability under section 631(a), a plaintiff need only establish that the defendant, "by means of any machine, instrument, contrivance, or in any other manner" does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or

Second Amended Complaint

instrument of any internal telephonic communication system,

*Or*

Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,

*Or*

Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,

*Or*

Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

92. Section 631(a) is not limited to phone lines, but also applies to "new technologies" such as computers, the Internet, and email. *Matera v. Google Inc.*, 2016 WL 8200619, at *21 (N.D. Cal. Aug. 12, 2016) (CIPA applies to "new technologies" and must be construed broadly to effectuate its remedial purpose of protecting privacy); *Bradley v. Google, Inc.*, 2006 WL 3798134, at *5-6 (N.D. Cal. Dec. 22, 2006) (CIPA governs "electronic communications"); *In re Facebook, Inc. Internet Tracking Litigation*, --- F.3d --- 2020 WL 1807978 (9th Cir. Apr. 9, 2020) (reversing dismissal of CIPA and common law privacy claims based on Facebook's collection of consumers' Internet browsing history).

///

///

21

Second Amended Complaint

93. Defendant's use of the session replay spyware constitutes use of a "machine, instrument, contrivance, or . . . other manner" to engage in the prohibited conduct at issue here.

94. By using the session replay spyware to track, record, and attempt to learn the contents of Plaintiff's and Class Members' electronic communications, Defendant intentionally tapped, electrically or otherwise, the lines of internet communication of Plaintiff and Class Members. and Defendant on the other.

95. By utilizing the session replay spyware, Defendant willfully and without consent, read or attempted to read or learn the contents or meaning of electronic communications of Plaintiff and Class Members, while the electronic communications were in transit or passing over a wire, line or cable or were being sent from or received at a place in California.

96. Plaintiff and Class Members did not consent to any of Defendant's actions in implementing these unauthorized connections, nor have Plaintiff or Class Members consented to Defendants' intentional access, interception, reading, learning, recording, and collection of Plaintiff's and Class Members' electronic communications.

97. Plaintiff's and the Class Members' devices that Defendant accessed through its unauthorized actions included their computers, smart phones, and tablets and/or other electronic computing devices.

98. Defendant violated Cal. Penal Code § 631 by knowingly accessing, and without permission accessing, Plaintiff's and Class Members' electronic communications through the use of the session replay spyware in order for Defendant to track, understand, and attempt to learn the contents of Plaintiff's and Class Members' electronic communications generated by the use of Defendant's website.

99. Defendant violated Cal. Penal Code § 631 by knowingly and without permission intercepting, wiretapping, accessing, taking and using Plaintiff's and the Class Members' communications.

100. Plaintiff and Class Members seek relief available under Cal. Pen. Code § 631, including $5,000 per violation pursuant to Cal. Pen. Code § 637.2.

101. Plaintiff's counsel is entitled to attorneys' fees and costs under Cal. Code of Civ. Proc. § 1021.5.

**THIRD CAUSE OF ACTION**

**VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT**

**CALIFORNIA PENAL CODE § 632**

102. Defendant used session replay spyware to secretly record the confidential communications of Plaintiff and Class Member when they visited Defendant's website.

103. Defendant did not warn or advise Plaintiff and Class Members that it was using session replay spyware to record their confidential communications with its website.

104. Defendant did not obtain consent prior to recording any of their confidential communications.

105. Defendant's conduct violated Cal. Pen. Code § 632.

106. Plaintiff and Class Members are entitled to statutory damages of $5,000 per violation of Cal. Pen. Code § 632 pursuant to Cal. Pen. Code § 637.2(a)(1).

107. Plaintiff's counsel is entitled to attorneys' fees and costs under Cal. Code of Civ. Proc. § 1021.5.

**FOURTH CAUSE OF ACTION**

**VIOLATION OF THE CALIFORNIA INVASION OF PRIVACY ACT**

**CALIFORNIA PENAL CODE § 632.7**

108. Defendant used session replay spyware to surreptitiously record the communications of Plaintiff and Class Member when they visited Defendant's website via their cell phones.

///

///

Second Amended Complaint

109. Defendant had a policy of not advising or warning Plaintiff and Class Members that it was using session replay spyware to record their cellular communications with Defendant's website.

110. Defendant refused to obtain consent of Plaintiff and Class Members prior to recording any of their cellular communications.

111. Defendant's conduct violated Cal. Pen. Code § 632.7(a).

112. Plaintiff and Class Members are entitled to statutory damages of $5,000 per violation of Cal. Pen. Code § 632.7(a) pursuant to Cal. Pen. Code § 637.2(a)(1).

113. Plaintiff's counsel is entitled to attorneys' fees and costs under Cal. Code of Civ. Proc. § 1021.5.

<b>PRAYER FOR RELIEF</b>

WHEREFORE, Plaintiff and the Class Members pray that judgment be entered against Defendant, and Plaintiff and Class Members be awarded damages from Defendant, as follows:

- Certify the Classes and Subclasses as requested herein;
- Appoint Plaintiff to serve as the Class Representative for the Classes and Subclasses;
- Appoint Plaintiff's Counsel as Class Counsel in this matter;
- Equitable or declaratory relief as may be appropriate under 18 U.S.C. § 2520(b)(1);
- The greater of $10,000 or $100 per day to each Wiretap Act Class Member for each violation of 18 U.S.C. § 2510 et seq pursuant to 18 U.S.C. § 2520(b)(2) and 18 U.S.C. § 2520(c)(2)(B);
- Reasonable attorneys' fees and other litigation costs reasonably incurred pursuant to 18 U.S.C. § 2520(b)(3);
- $5,000 per violation of Cal. Pen. Code §§ 631, 632 and 632.7 to each CIPA Class and Subclass Member pursuant to Cal. Pen. Code § 637.2;
- Reasonable attorneys' fees pursuant to Cal. Code of Civ. Proc. § 1021.5;

24

- Injunctive relief to prevent the further violations of Cal. Pen. Code §§ 631, 632 and 632.7.
- An award of costs to Plaintiff; and
- Any other relief the Court may deem just and proper including interest.

**TRIAL BY JURY**

114. Pursuant to the Seventh Amendment to the Constitution of the United States of America, Plaintiff and Class Members are entitled to, and demand, a trial by jury.


Respectfully submitted,

**SWIGART LAW GROUP**

Date:  February 1 , 2023            By:  *s/ Joshua Swigart*
                                    Joshua B. Swigart, Esq.
                                    Josh@SwigartLawGroup.com
                                    Attorneys for Plaintiff


**LAW OFFICE OF DANIEL G. SHAY**

Date:  February 1, 2023            By:  *s/ Daniel Shay*
                                    Daniel G. Shay, Esq.
                                    DanielShay@TCPAFDCPA.com
                                    Attorney for Plaintiff

Second Amended Complaint